UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORETTA DAVIS and K.D.,<br>    *Plaintiffs*,<br>    *v.*<br>CITY OF NEW HAVEN, *et al.*,<br>    *Defendants*. | Civil No. 3:11cv1829 (JBA)<br><br><br>March 30, 2014 |

**RULING ON PENDING MOTIONS**

Plaintiffs Loretta Davis and Keyonna Davis[1], proceeding pro se, bring this action against Defendants City of New Haven, New Haven Board of Education, Amanda Weires, Frank Costanzo, Fallen Daniels, and Delores Garcia-Blocker pursuant to 42 U.S.C. § 1983, alleging selective treatment in violation of their Fourteenth Amendment right to equal protection (Count One), retaliation in violation of their First Amendment rights (Count Two), a state-law claim for intentional infliction of emotional distress (Count Three), and a state-law claim for negligent supervision and failure to supervise (Count Four).  (*See* Am. Compl. [Doc. # 25].)  Defendants move [Doc. # 74] for summary judgment on each of Plaintiffs' claims, arguing that they are entitled to judgment as a matter of law and that there are no genuine issues of material fact remaining in this case. After the summary judgment motion was fully briefed, Plaintiffs moved to consolidate this case [Doc. # 85], to subpoena Connecticut police records [Doc. # 86], and to supplement the pleadings [Doc. # 88].  For the reasons that follow, Defendants' motion for summary judgment is granted with respect to Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims, and

---

[1] Ms. Davis was a minor when this case was filed and thus the case caption does not reflect her full name.  Since then, she has reached the age of majority and thus the Court will refer to her by her full name in this opinion.

Plaintiffs' motions to consolidate, to subpoena police records, and to supplement the pleadings are denied.

## I.        Background

Plaintiff Keyonna Davis, and her mother, Plaintiff Loretta Davis, are African American, and reside together in New Haven, Connecticut.  (Am. Compl. [Doc. # 25] ¶¶ 3–4; Ans. [Doc. # 27] ¶¶ 3–4.)  Ms. Davis was a student at the Cooperative Arts & Humanities High School ("Co-op"), a public magnet school in New Haven.  (Am. Compl. ¶ 4; Ans. ¶ 4.)  She was a junior during the 2010 to 2011 school year and a senior during the 2011 to 2012 school year.  (Am. Compl. ¶¶ 6, 31; Ans. ¶¶ 6, 31.)  During Ms. Davis's junior year, Defendant Garcia-Blocker was the head principal of Co-op (Garcia-Blocker Aff. [Doc. # 74-3] ¶ 3), Defendant Costanzo was an assistant principal at Co-op (Costanzo Aff. [Doc. # 74-4] ¶ 2), Defendant Daniels was head of the science department at Co-op (Am. Compl. ¶ 10), and Defendant Weires, who is Cacausian, was a first-year chemistry and physics teacher at Co-op (Weires Aff. ¶ 2).  That year, Ms. Davis was enrolled in Defendant Weires's seventh-period chemistry class, which was held every other day.  (Weires Aff. ¶ 4; Garcia-Blocker Aff. ¶ 4.)

### A.        November 2010 Incident

On November 1, 2010, Ms. Davis missed school due to an excused absence, and therefore did not take the first-quarter exam that Defendant Weires held in her seventh-period chemistry class that day.  (Weires Aff. ¶ 5.)  Several other students, both African American and Caucasian, missed the exam that day.  (*Id.*)  A few days later, a group of students, including Ms. Davis, stayed after class to discuss making up the exam with Defendant Weires.  (Weires Aff. ¶ 6; Keyonna Davis Dep. Tr., Ex. 1 to Defs.' Loc. R.

56(a)1 Stmt. [Doc. # 74-5] at 39–40.)[2]  Ms. Davis was talking with her friends while she waited for Defendant Weires to finish helping another student.  (Keyonna Davis Dep. Tr. at 40.)  Defendant Weires thought she overheard Ms. Davis talking about another student who had been a victim of bullying, and so she asked Ms. Davis what she had said. (Weires Aff. ¶ 6; Keyonna Davis Dep. Tr. at 40.)  Ms. Davis denied that she had said anything, but Defendant Weires continued to ask what Ms. Davis had said "about Shelby."  (Weires Aff. ¶ 6; Keyonna Davis Dep. Tr. at 40.)  Ms. Davis felt that Defendant Weires was "trying to verbally attack" her—she became very upset and walked out of the classroom with one of her friends.  (Weire Aff. ¶ 6; Keyonna Davis Dep. Tr. at 40.)

When she got home that day, Ms. Davis told her mother about the incident with Defendant Weires.   (Keyonna Davis Dep. Tr. at 41.)   Mrs. Davis called Co-op immediately and set up a meeting with Defendant Costanzo for the next day to discuss the incident.  (Loretta Davis Dep. Tr., Ex. 2 to Defs.' 56(a)1 Stmt. at 9.)  Mrs. Davis met with Defendants Costanzo and Daniels the next morning and informed them that Defendant Weires had a "meltdown" and was "verbally abusive" towards Keyonna.  (*Id.* at 10.)  Mrs. Davis also told Defendants Costanzo and Daniels that Keyonna had told her that Defendant Weires "seemed to be more aggressive towards the black students" in her chemistry class.  (*Id.* at 11.)  Defendant Costanzo then held a meeting with Mrs. Davis, Ms. Davis and Defendant Weires.  (Costanzo Aff. [Doc. # 74-4] ¶ 4; Weires Aff. ¶ 7.)  The parties discussed the incident from the previous day, and Defendant Weires explained

---

[2]Defendant Weires misunderstood the school district's policy on make-up exams, and at some point in time, she informed the students who missed the first quarter exam that they could not make up the exam for credit.  (Weires Aff. ¶ 11.)  Thus, Ms. Davis did not make up the exam she missed.  (*Id.*)  So as not to penalize students for her misunderstanding, Defendant Weires did not include the first quarter exam when calculating the final grades for the first quarter.  (*Id.*)

that she had been concerned about bullying.  (Keyonna Davis Dep. Tr. at 47.)  Mrs. Davis then asked whether Defendant Weires was racially biased.  (*Id.* at 47–49; Loretta Davis Dep. Tr. at 13.)  Defendant Weires responded that she believed everyone was prejudiced to some degree, and that she was prejudiced to some degree against certain students.  (Keyonna Davis Dep. Tr. at 50; Loretta Davis Dep. Tr. at 13.)  Defendant Weires did not explain in what way she was prejudiced or against whom she was prejudiced.  (Loretta Davis Dep. Tr. at 13.)  After Defendant Weires made this statement, Ms. Davis became very upset and left the meeting crying.  (Keyonna Davis Dep. Tr. at 51.)

After the meeting with Defendants Weires and Costanzo, Mrs. Davis met with Defendant Garcia-Blocker and Defendant Costanzo.  (Loretta Davis Dep. Tr. at 24; Garcia-Blocker Aff. [Doc. # 74-3] ¶ 5.)  Mrs. Davis informed Defendant Garcia-Blocker about the comment Defendant Weires made at the earlier meeting, and asked Defendant Garcia-Blocker to transfer Keyonna to a different chemistry class.  (Loretta Davis Dep. Tr. at 24; Garcia-Blocker Aff. ¶ 5; Costanzo Aff. ¶ 5.)  The only other seventh-period chemistry class was a significantly more difficult Advanced Placement class for which Ms. Davis did not qualify, and the only other junior chemistry class taught by a teacher other than Defendant Weires conflicted with Ms. Davis's class schedule.  (Garcia-Blocker Aff. ¶ 6; Costanzo Aff. ¶ 5.)  Defendant Garcia-Blocker therefore denied Mrs. Davis's request to transfer Keyonna, and stated that staying in Defendant Weires's class would be a valuable learning experience for Keyonna in dealing with difficult people.  (Garcia-Blocker Aff. ¶ 6.)  Defendant Garcia-Blocker also promised to speak with Defendant Weires regarding the incident and to check in on her seventh-period chemistry class to make sure that Keyonna was being treated fairly.  (*Id.*; Costanzo Aff. ¶ 5; Loretta Davis Dep. Tr. at 26–27.)  Ms. Davis does not believe that she was treated differently by

Defendants Garcia-Blocker or Costanza because of her race with respect to this incident. (Keyonna Davis Dep. Tr. at 78.)

Defendant Garcia-Blocker did personally speak with Defendant Weires and periodically looked in on Keyonna's seventh-period chemistry class during her daily walkthrough of the school. (Garcia-Blocker Aff. ¶ 7.) Defendant Garcia-Blocker never observed Defendant Weires treat Ms. Davis unfairly during these periodic check-ins. (*Id.*) However, Ms. Davis claims that on the day after the meeting with Defendant Weires, Defendant Weries passed over her in class when she raised her hand. (Keyonna Davis Dep. Tr. at 51–52.) Ms. Davis felt as if Defendant Weires would call on African American students less frequently than Caucasian students and that Defendant Weires overlooked the African American students in the class. (*Id.* at 56–58.) Defendant Weires had a policy of only answering questions during class if they could be addressed with a brief explanation. (Weires Aff. ¶ 9.) However, Defendant Weires informed the students that she was available before and after class to assist students with more complicated questions. (*Id.*) Ms. Davis would stay after class about once every other week with her friends to get extra help from Defendant Weires, but Ms. Davis felt that this extra instruction was not very helpful. (Keyonna Davis Dep. Tr. at 56, 77; Weires Aff. ¶ 9.)

### B.   Grading Difficulties

Ms. Davis felt that Defendant Weires began to tamper with her grades after the incident in November. (Keyonna Davis Dep. Tr. at 82.) Defendant Weires, along with the other teachers at Co-op, used engrade.com to post grades during Ms. Davis's junior year of high school. (Weires Aff. ¶ 10.) Before the incident with Defendant Weires in November, Ms. Davis's interim progress report indicated that she was getting a B in chemistry. (Keyonna Davis Dep. Tr. at 59.) However, Ms. Davis's final grade for the first

quarter was a C.   (Weires Aff. ¶ 14; Grade Report, Ex. 9 to Pls.' Aff. [Doc. # 78-1].)

During that quarter, Ms. Davis received ten extra credit points and 100% for classroom

participation.  (Weires Aff. ¶ 14, Grade Report.)  Ms. Davis received either a B- or a C+ as

a final grade in chemistry.  (*Compare* Weires Aff. ¶ 15 (noting that Ms. Davis received a

B-) *with* Report Card, Ex. 12 to Pls.' Aff. (noting that Ms. Davis received a C+).)   The

highest grade in Defendant Weires's seventh-grade chemistry class that year was an A.

(Weires Aff. ¶ 15.)[3]  The next highest grade was a B+, and the third highest grade was

a  B-.   (*Id.*)   One  student  received  an  A,  one  student  received  a  B+,  and  two  or  three

students received a B-.  (*Id.*)  The highest grade received by a Caucasian student was a C+.

(*Id.*)

During her first year, Defendant Weires struggled with organization and grading.

(Garcia-Blocker Aff. ¶ 10.)  She lost or misplaced assignments and had great difficulty

reporting students' grades in an accurate and timely fashion on engrade.com.  (*Id.*)  These

difficulties became more pronounced in the second half of the school year, especially after

a flood in Defendant Weires's car destroyed several students' assignments.  (*Id.*; Weires

Aff.  ¶  12.)   Defendant  Garcia-Blocker  spoke  with  Defendant  Weires  regarding  these

issues, and provided her remedial assistance, to which Defendant Weires was receptive.

(*Id.* ¶¶ 10–11.)  As a result of Defendant Weires's difficulties, Defendant Garcia-Blocker

received numerous complaints from the parents of both African American and Caucasian

students  regarding  grade  discrepancies.   (Garcia-Blocker  Aff.  ¶  10.)   In  March  of  2011,

Mrs. Davis complained to Defendants Garcia-Blocker and Costanzo about her concerns

relating to Keyonna's chemistry grade.  (*Id.* ¶ 8; Costanzo Aff. ¶ 6.)

---

[3] In her affidavit, Defendant Weires avers that the highest grade in the class was a
B, but this appears to be a typo, because she goes on to mention that the next highest
grade was a B+.  (*See* Weires Aff. ¶ 15.)

On March 30, 2011, Mrs. Davis filed a written complaint with the U.S. Department of Education Office of Civil Rights ("OCR"), alleging that Ms. Davis had been discriminated against by Defendant Weires and that the administration had retaliated against Ms. Davis as a result of her complaint about this discrimination. (*See* OCR Report, Ex. B to Costanzo Aff. at 1.) On April 1, 2011, Defendants Garcia-Blocker and Costanzo met with Mrs. Davis regarding her grading concerns. (Costanzo Aff. ¶ 6.) During the meeting Mrs. Davis demanded that they file a complaint against Defendant Weires, but none was filed. (*Id.*) The OCR conducted a full investigation of Mrs. Davis's complaint and determined that there was insufficient evidence to substantiate her claim that Keyonna was subjected to a hostile environment and retaliated against on the basis of her race. (OCR Report at 8.) After the OCR complaint was filed, Defendants offered to move Ms. Davis to the seventh-period AP chemistry class for the rest of the year, and to provide additional instruction from the AP teacher to assist her with the more advanced material, but Mrs. Davis declined the offer. (Garcia-Blocker Aff. ¶ 12.)

### C.   Senior Day

Ms. Davis also attended Co-op as a senior during the 2011 to 2012 school year. (Compl. ¶ 31; Ans. ¶ 31.) Senior Day, which is a school day on which seniors get to skip class and attend various activities, was held on November 7, 2011. (Keyonna Davis. Dep. Tr. at 35.) Students had to fulfill several requirements by November 4, 2011 in order to participate in Senior Day—they needed to have two teacher recommendations and to have entered a list of at least four colleges into their CSNav accounts, which were online accounts to assist students who were preparing to attend college. (*Id.* at 6, 22.) A week before Senior Day, Defendant Daniels, the senior college advisor, informed Ms. Davis that she was missing both of her required recommendation letters from her file. (*Id.* at 9,

11.)   About five days before Senior Day, Ms. Davis contacted both of her teacher recommenders and they informed her that they had already submitted the required recommendation letters.  (*Id.* at 11.)  However, on Senior Day, when Ms. Davis checked the list of eligible students, it indicated that she was missing one teacher recommendation and her college list.  (*Id.* at 16.)   Ms. Davis immediately went to see her guidance counselor, Ms. White, who confirmed that both letters were in Ms. Davis's file.  (*Id.* at 17.)  Ms. Davis then called her mother, who came to the school and attended a meeting with her daughter and Ms. Daniels.  (*Id.* at 19.)  During the meeting, Ms. Daniels accessed Ms. Davis's CSNav account, which indicated that it had been accessed at 7:30am that morning and the last two colleges of the required four had been added at that time.  (*Id.* at 19–20.)  Ms. Daniels and Ms. Davis were the only two people with access to Ms. Davis's CSNav account, but Ms. Davis denied making the changes that morning.  (*Id.* at 21.)  Ms. Davis became upset at the implication that she had logged into her account after the deadline and began to cry, to which Ms. Daniels responded by laughing at her.  (*Id.* at 22.)

Ms. Davis and her mother then left the meeting with Ms. Daniels.  (*Id.* at 28, 33.) They went to Ms. Davis's guidance counselor's office to make copies of her letters of recommendation to prove that they were in Ms. Davis's file.  (*Id.*)  However, by the time they returned, Ms. Daniels had left her office and gone onto the stage to address the seniors.  (*Id.* at 34.)  Ms. Davis and her mother waited in the main office for Ms. Daniels for about twenty minutes, and then left the school.  (*Id.* at 34–35.)  They made no attempt to locate any other administrators to resolve the misunderstanding.  (*Id.* at 63–65.)  Ms. Davis does not believe that Ms. Daniels treated her any differently during this incident because of her race.  (*Id.* at 79.)  Ms. Davis did not have any other issues with Defendants

8

her senior year.  (*Id.* at 37.)  She did not miss any other activities, and attended her Senior Prom and Graduation ceremonies.  (*Id.* at 35–36.)

## II.     Plaintiffs' Motion to Consolidate

Plaintiffs move pursuant to Federal Rule of Civil Procedure 42 to "consolidate" this case.  Rule 42 provides that: "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  However, Plaintiffs have failed to identify the action with which they wish this action to be consolidated, and a review of this District's electronic filing system indicates that there are no other cases filed by Plaintiffs pending in this District. Therefore, Plaintiffs' motion to consolidate is denied, in the absence of any case with which to consolidate the pending action.  The Court notes that Plaintiffs have included the names of Kimberly Carolina and Daniel Diaz as defendants in the caption of their motion to consolidate.  Ms. Carolina and Mr. Diaz were named as defendants in Plaintiffs' original pro se complaint, but were terminated when Plaintiffs' former counsel filed the Amended Complaint [Doc. # 25], which omitted any claims against these individuals.  To the extent that Plaintiffs wish to join Ms. Carolina and Mr. Diaz to this action, and assert new claims against them, that request will be discussed below, in the context of Plaintiffs' motion to supplement the pleadings.

## III.    Plaintiffs' Motion to Supplement the Pleadings

After Defendants' summary judgment motion was fully briefed, Plaintiffs moved to supplement their pleadings, seeking to join Kimberly Carolina and Daniel Diaz as defendants and to assert new claims against each of the Defendants under 20 U.S.C. § 7283 and 18 U.S.C. §§ 2252, 2255, 2256, 2258, 2258E, 2259, 3663, and 3663A.  Plaintiffs

style this motion as a motion to "supplement the pleadings," but because the motion appears to reference events occurring before the original complaint in this case was filed, the Court will construe Plaintiffs' motion as a motion to amend the Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 15(a).  *Compare* Fed. R. Civ. P. 15(d) (limiting supplemental pleadings to transactions, occurrences, or events, dating from after the original complaint) *with* Fed. R. Civ. P. 15(a) (governing amendments to pleadings).  Defendants oppose this motion, arguing that Plaintiffs cannot show they have good cause to file an amendment that post-dates the deadline for amended pleadings set forth in the scheduling order in this case.

After a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave . . . [which] the court should freely give when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Rule 15 has been applied liberally, so that the Federal Rules "facilitate a proper decision on the merits."  *Foman v. Davis,* 371 U.S. 178, 182 (1962) (*quoting Conley v. Gibson,* 355 U.S. 41, 48 (1957)).  The Court has broad discretion to determine whether or not to allow a party to amend its complaint, considering "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Id.*  Though Rule 15 is applied liberally, "Rule 16(b) may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed.  *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 243 (2d Cir. 2007); Fed. R. Civ. P. 16(b).  Under the Rule 16(b) standard, a party may obtain a modification of the scheduling order only "upon a showing of good cause."

Federal Rule of Civil Procedure 21 governs the addition of new parties to an action, and provides that parties may be added by court order "on such terms as are just." Under Rule 21 "courts must consider judicial economy and their ability to manage each particular case, as well as how the amendment would affect the use of judicial resources, the impact the amendment would have on the judicial system, and the impact the amendment would have on each of the parties already named in the action." *Sly Magazine, LLC v. Weider Publ'ns, LLC*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007). However, courts are guided by "the same standard of liberality afforded to motions to amend pleadings under [Fed. R. Civ. P.] 15," when determining whether a plaintiff should be permitted to add parties to an action. *Soler v. G & U, Inc.*, 86 F.R.D. 524, 527–28 (S.D.N.Y. 1980).

As a preliminary matter, Plaintiffs' proposed amended complaint consists of a string of statutory citations and alleges no facts whatsoever in support of their proposed claims under those statutes. Without any factual support for their claims, Plaintiffs' proposed amendments are futile. Furthermore, the majority of the statutes cited by Plaintiff are criminal statutes relating to child pornography offenses, statutes governing orders of restitution in criminal cases, and congressional findings with respect to sexual harassment. None of these statutes appear to give rise to a private right of action with the exception of 18 U.S.C. § 2255, which creates a private right of action for victims of child pornography, and thus any claims under those statutes would be futile.

With respect to Plaintiffs' proposed claims under 18 U.S.C. § 2255, the Court infers based on the procedural history of this case that these claims relate to a previous allegation by Plaintiffs that Defendant Weires used Keyonna Davis's name to advertise child pornography. In the original complaint, Loretta Davis alleged that when she

performed a google search of the file path for the grade site that Defendant Weires maintained for Keyonna, one of the websites in the search results was a pornographic website with links to child pornography.  The Amended Complaint, which was filed by Plaintiffs' then-counsel, omitted all references to these allegations and alleged no claims against Ms. Carolina or Mr. Diaz.  Before the pending summary judgment motion was filed, Plaintiffs attempted to amend their complaint to reintroduce these allegations.  (*See* Mot. to Amend [Doc. # 46].)  Magistrate Judge Margolis denied this motion, concluding that Plaintiffs lacked good cause to amend after the deadline for amended pleadings in the parties' scheduling order had expired.  (*See* Order [Doc. # 54].)[4]  Thus, Plaintiffs' instant motion appears to be an attempt to relitigate that ruling.

Plaintiffs have made no new allegations in their motion to supplement that would establish good cause to amend the complaint after the deadline for amended pleadings set forth in the scheduling order in this case.  (*See* Scheduling Order [Doc. # 24] (setting November 30, 2012 as the deadline for amended pleadings).)  Furthermore, Plaintiffs' proposed claim pursuant to 18 U.S.C. § 2255 appears to be futile as Plaintiffs do not appear to claim that Keyonna Davis appeared in any of the alleged pornographic images. Even if Plaintiffs were able to establish that they had good cause for their untimely amendment and that such amendment was not futile, an amendment of the complaint to add additional parties and claims at this late date, after the close of discovery and months after the summary judgment motion was filed, would unduly prejudice Defendants.  *See Enzo Biochem, Inc. v. Applera Corp.*, 243 F.R.D. 249–50 (D. Conn. 2007) (denying leave to amend where the motion to amend was filed one day after the summary judgment

---

[4] Magistrate Judge Margolis also granted Defendants' motion [Doc. # 80] to strike all references to the alleged pornographic website from Plaintiffs' opposition to the motion for summary judgment.  (*See* Rul. on Mot. to Strike [Doc. # 83].)

motions were filed and thirty-one months after the answer was filed). Therefore, Plaintiffs' motion to supplement the pleadings is denied.[5]

## IV.     Defendants' Motion for Summary Judgment[6]

Defendants move for summary judgment on each of Plaintiffs' claims, arguing that Plaintiffs have failed to identify any genuine issues of material fact that would preclude the Court from granting judgment in Defendants' favor.

### A.     Equal Protection

Plaintiff Keyonna Davis brings a claim against all Defendants for the violation of her Fourteenth Amendment right to equal protection. In order to establish an equal protection violation, Ms. Davis must show that (1) Defendants treated her differently from other similarly situated individuals and (2) that such selective treatment was based on an impermissible consideration such as race or religion. *Kajoshaj v. New York City*

---

[5] Plaintiffs also move [Doc. # 86] to subpoena Connecticut police records related to their complaints regarding the alleged pornographic website. Because the Court has denied Plaintiffs' motion to amend and the issue of the website has no bearing on the claims in the Amended Complaint, Plaintiff's motion requesting a subpoena is denied as moot.

[6] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.,* 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.,* 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

*Bd. of Educ.*, 543 F. App'x 11, 15 (2d Cir. 2013) (citing *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).  "To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare [herself] must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).  In this case, Ms. Davis claims that she was treated differently from her peers on the basis of her race. Defendants argue that Ms. Davis has failed to meet her burden of production on either of the elements of her claim.

### 1.     Defendant Weires

Ms. Davis claims that she was subjected by selective treatment on the basis of her race by Defendant Weires in several respects:  (1) that Defendant Weires refused to allow her to make up her first-quarter exam; (2) that Defendant Weires tampered with her chemistry grade; and (3) that Defendant Weires refused to assist her when she had questions about the subject matter of the course.  Defendants argue that Ms. Davis has failed to establish either prong of her selective treatment claim with respect to any of these issues.

With respect to the missed exam, Defendant Weires avers that she told all of the students who missed the first-quarter exam that they could not make up the exam based on her misunderstanding of the school district's policy regarding make-up exams. (Weires Aff. ¶ 11.)  Defendant Weires also avers that when she discovered her mistake, she excluded the first-quarter exam grade from the calculation of the final grade for each of the students who had missed the exam.  (*Id.*)  Plaintiffs have not offered any evidence to contradict these statements.  Therefore, there is no evidence in the record based on which a jury could reasonably conclude that Ms. Davis was treated differently than any of the other students who missed the exam, whether on the basis of her race or otherwise.

14

With respect to the claim that Defendant Weires tampered with Ms. Davis's chemistry grade, a review of the record establishes that the parents of both African American and Caucasian students raised complaints with Co-op regarding the grading in Defendant Weires's classes.  (Garcia-Blocker Aff. ¶ 10.)  As discussed *supra*, during her first year, Defendant Weires struggled greatly with organization and grading.  (*Id.*)  Plaintiffs have offered no evidence to contradict Defendant Garcia-Blocker's statement that these grading difficulties affected both Caucasian and African American students.  Furthermore, the record reflects that there were no Caucasian students in the class who received a higher final grade that Ms. Davis.  Although the parties dispute whether Ms. Davis received a B- or a C+ as her final chemistry grade, there is no evidence to contradict the fact that the highest grade received by a Caucasian student in Defendant Weires's seventh-period chemistry class was a C+.  (*Id.* ¶ 15.)  Ms. Davis also received high marks on some of her quarterly grade reports—she received the maximum amount of extra credit available during the first quarter, and received 100% for classroom participation that quarter.  (*Id.* ¶ 14; Grade Report.)  Based on this record, a reasonable jury could not conclude that Ms. Davis was treated differently than her classmates with respect to her grades, whether on the basis of her race or otherwise.

Finally, with respect to Ms. Davis's claim that Defendant Weires refused to assist her with her classwork, Ms. Davis reports that the day after she and her mother met with Defendants Weires and Costanzo, Defendant Weires passed over her in class when she raised her hand.  (Keyonna Davis Dep. Tr. at 51–52.)  Ms. Davis has expressed her subjective belief that Defendant Weires called on African American students less frequently than Caucasian students.  (Keyonna Davis Dep. Tr. at 56–58.)  However, other than this subjective belief, there is no evidence in the record to suggest that Defendant

Weires called on African American students in her class less frequently than Caucasian students.[7]  Furthermore, Defendant Weires avers that she informed her students that she was available before and after class to assist students with more complicated questions. (Weires Aff. ¶ 9.)  Ms. Davis would stay after class about once every other week with her friends to get extra help from Defendant Weires.  (*Id.*; Keyonna Davis Dep. Tr. at 56, 77.) Based on Ms. Davis's own admission at her deposition, Defendant Weires did provide regular assistance to her and her friends after class.  Therefore, Ms. Davis has failed to put forth sufficient evidence based on which a jury could conclude that she received differential treatment on the basis of her race with respect to the assistance Defendant Weires provided to her students.

Defendants' motion for summary judgment is thus granted with respect to Ms. Davis's equal protection claim against Defendant Weires.

### 2.    *Defendant Daniels*

It appears that Ms. Davis's equal protection claim against Defendant Daniels is based on Defendant Daniels's refusal to allow her to participate in Senior Day.  However, Plaintiff has failed to allege the existence of any similarly situated comparators with respect to this claim.  Furthermore, even if there were evidence in the record based on which a jury could conclude that Ms. Davis was treated differently than other students with respect to Senior Day eligibility, Ms. Davis stated in her deposition that she does not believe that Ms. Daniels treated her any differently during this incident because of her

---

[7] In her deposition, Ms. Davis stated that some of her friends shared this belief (Keyonna Davis Dep. Tr. at 56–58) and the OCR Report indicates that some students in the focus group reported that Defendant Weires yelled at African American students in her class more frequently than Caucasian or Hispanic students (OCR Report at 3). However, absent any affidavits or deposition testimony from any of these students, these statements represent inadmissible hearsay and thus the Court may not rely on them in evaluating Defendants' summary judgment motion.

race.  (Keyonna Davis Dep. Tr. at 79.)  A review of the record does not reveal any other evidence based on which a jury could infer that Defendant Daniels, who is African American (*id.*), was motivated by racial animus when she accused Ms. Davis of tampering with her CSNav account and refused to permit her to attend Senior Day.  Therefore, Ms. Davis cannot satisfy the second element of her equal protection claim against Defendant Daniels and the Court thus grants Defendants' motion for summary judgment with respect to that claim.

> 3.   *Defendants Costanzo and Garcia-Blocker*

To the extent that Ms. Davis's equal protection claims against Defendants Costanzo and Garcia-Blocker are based on their failure to adequately supervise Defendants Daniels and Weires, these claims must fail because the Court has granted summary judgment on Ms. Davis's underlying claims against those Defendants.  Without an underlying constitutional violation, there can be no supervisory liability for that violation.  However, it appears that Ms. Davis may also be claiming that Defendants Costanzo and Garcia-Blocker violated her right to equal protection by refusing to transfer her to another chemistry class. Plaintiffs have not identified any similarly situated comparators who requested and were granted a transfer.  Thus, Ms. Davis cannot satisfy the first element of her equal protection claim against these Defendants.  Furthermore, even assuming that Plaintiffs could identify similarly situated comparators, the record reflects that the only other seventh-period chemistry class was an AP class for which Ms. Davis did not qualify, and that the other available junior chemistry class conflicted with Ms. Davis's class schedule.  (Garcia-Blocker Aff. ¶ 6; Costanzo Aff. ¶ 5.)  Notwithstanding these conflicts, when Mrs. Davis filed her complaint with the OCR, Defendant Garcia-Blocker offered to transfer Ms. Davis to the seventh-period AP chemistry class with

additional individualized instruction to compensate for the more difficult course material, and Mrs. Davis declined this offer. (Garcia-Blocker Aff. ¶ 12.) In her deposition, Ms. Davis stated that she does not believe that she was treated differently by Defendants Garcia-Blocker or Costanza because of her race. (*Id.* at 78.) A review of the record reveals no other evidence based on which a jury could reasonably conclude that the decision not to transfer Ms. Davis to another chemistry class was made on the basis of her race. Therefore, Ms. Davis has not offered sufficient evidence to support her equal protection claims against Defendants Garcia-Blocker and Costanzo and Defendants' motion for summary judgment on those claims is granted.

### B.    First Amendment Retaliation

Both Ms. and Mrs. Davis bring claims for retaliation in violation of their First Amendment rights against each of the Defendants. To succeed on their First Amendment retaliation claims, Plaintiffs must establish that: (1) they have a right protected by the First Amendment; (2) Defendants' actions were motivated or substantially caused by their exercise of that right; and (3) Defendants' actions caused them some injury. *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Absent a showing of some other concrete harm, Plaintiffs must establish that Defendants' actions effectively chilled the exercise of their First Amendment rights. *Id.*

#### 1.    *Plaintiff Keyonna Davis*

Ms. Davis alleges that Defendants retaliated against her for her complaint to her mother about Defendant Weires's alleged bias and her mother's filing of an OCR complaint on her behalf (1) when Defendant Weires tampered with her grades and refused to help her in class, (2) when Defendants Garcia-Blocker and Costanzo refused to

transfer her to another chemistry class, and (3) when Defendant Daniels denied her permission to attend Senior Day.

Defendants argue that they are entitled to summary judgment because Ms. Davis cannot establish that her complaints to her mother regarding Defendant Weires were protected speech in that they did not address a matter of public concern.[8]  However, in making this argument, Defendants attempt to import the standard for public employee First Amendment retaliation claims into a case involving private citizens.  *See Hoyt v. Andreucci*, 433 F.3d 320, 329–30 (2d Cir. 2006) (laying out standard for public employee cases).  Even if this standard were applicable in the case of a public school student and her private-citizen parent, Ms. Davis's complaint to her mother, that her mother relayed to school officials, was that Defendant Weires "seemed to be more aggressive towards the black students" in her chemistry class.  (Loretta Davis Dep. Tr. at 11.)  Such a complaint would implicate the Fourteenth Amendment rights of all of the students taught by Defendant Weires and thus would rise above a mere personal grievance to address a matter of public concern.

Defendants next argue that Ms. Davis has failed to establish that any of the alleged retaliatory acts were motivated by the exercise of her First Amendment rights.  With respect to the alleged retaliatory acts committed by Defendant Weires, the alleged grading discrepancies and failure to assist Ms. Davis with her classwork did occur very soon after Ms. Davis and her mother complained about Defendant Weires to school administrators.  However, while temporal proximity can give rise to an inference of retaliation, the undisputed record reflects that Defendant Weires had serious difficulties completing her grade reports in an accurate and timely fashion, and that these difficulties affected many

---

[8] Defendants acknowledge that the OCR complaint was protected speech.

students of different races in her class.  (*See* Garcia-Blocker Aff. ¶ 10.)  The record also reflects that Ms. Davis received high marks on some of her assignments (Weires Aff. ¶ 14; Grade Report), and that she received an above-average grade in her chemistry class, that was at least as high as the highest grade received by a Caucasian student.  (*Id.* ¶ 15.) Furthermore, Defendant Weires had a policy of addressing complicated questions after class and Ms. Davis does not dispute that Defendant Weires frequently provided her such after-class assistance over the course of the school year.  (*See* Keyonna Davis Dep. Tr. at 56, 77; Weires Aff. ¶ 9.)  Based on this record, a reasonable jury could not conclude that Ms. Davis's grade reports or Defendant Weires's decision to provide assistance after class, rather than during class, were motivated by Ms. Davis's complaint regarding Defendant Weires.

With respect to Defendant Garcia-Blocker's and Costanzo's decision not to transfer Keyonna to another chemistry class, although this decision was made on the same day as Ms. Davis's complaint, Plaintiffs do not dispute that the only other seventh-period chemistry class was an AP class for which Ms. Davis did not qualify, and that the other available junior chemistry class conflicted with Ms. Davis's class schedule.  (Garcia-Blocker Aff. ¶ 6; Costanzo Aff. ¶ 5.)  Notwithstanding these conflicts, when Mrs. Davis filed her complaint with the OCR, Defendant Garcia-Blocker offered to transfer Ms. Davis to the seventh-period AP chemistry class with additional individualized instruction to compensate for the more difficult course material, and Mrs. Davis declined this offer. (Garcia-Blocker Aff. ¶ 12.)  Thus, Defendants actually reconsidered the allegedly retaliatory action after an additional complaint had been filed.  Such behavior does not give rise to an inference of retaliation.  In light of this undisputed evidence, a reasonable

jury could not conclude that the decision not to transfer Ms. Davis to another chemistry class was motivated by her exercise of her First Amendment rights.

Finally, with respect to the Senior Day incident involving Defendant Daniels, this incident took place a year after Ms. Davis's original complaint to school officials and nearly eight months after her mother filed a complaint with the OCR.  Furthermore, Plaintiffs do not dispute that neither complaint involved Defendant Daniels personally. (Loretta Davis Dep. Tr. at 75.)  Although a temporal connection can be "enough, in and of itself . . . to permit a reasonable jury to find causation," *Summa v. Hofstra Univ.*, 708 F.3d 115, 127 (2d Cir. 2013), "[t]he cases that accept mere temporal proximity [between the complaint and the alleged adverse action] as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be very close," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation marks omitted).  Here, many months had passed between the protected activity and the alleged retaliatory action, and the alleged retaliatory actor was not even implicated by the protected activity.  Absent other evidence of a retaliatory motive on the part of Defendant Daniels a reasonable jury could not conclude that her actions on Senior Day were taken in retaliation for Ms. Davis's complaints.

Therefore, Defendants' motion for summary judgment is granted with respect to Ms. Davis's First Amendment retaliation claim.

### 2.    *Plaintiff Loretta Davis*

Mrs. Davis alleges that Defendants committed a host of retaliatory acts against her as a result of her complaints to the school district and the OCR.[9]   Based on her responses

---

[9] In her deposition, Mrs. Davis appeared to allege retaliation based on Defendants' failure to report Defendant Weires for the purported pornographic website.  (Loretta

at her deposition, Mrs. Davis appears to allege the following as the basis for her First Amendment retaliation claim in the Amended Complaint:  (1) Defendant Garcia-Blocker's and Defendant Costanzo's decision not to move Keyonna to another chemistry class; (2) her inability to get in touch with the district supervisor or the superintendent to file additional complaints; (3) Defendant Weires's alleged tampering with Keyonna's grades; (4) Defendant Garcia-Blocker's failure to look after Keyonna; (5) Defendant Costanzo's refusal to file a complaint against Defendant Weires; and (6) Defendant Daniels's refusal to allow Keyonna to participate in Senior Day.

Defendants argue that they are entitled to summary judgment on Mrs. Davis's First Amendment retaliation claim because she cannot show that she suffered any injury as a result of the alleged retaliation.  Nearly all of the retaliatory acts of which Mrs. Davis complains directly impacted her daughter rather than her.  Thus, Mrs. Davis did not suffer any concrete injury as a result of the alleged retaliation.  However, she would still have standing to pursue her claim provided that she could establish that her speech was chilled as a result of the retaliation.  Here, Plaintiff filed the OCR complaint after the vast majority of the alleged retaliatory acts had taken place.  She continued to call school administrators and complain even after the OCR complaint had been filed.  (*See* Costanzo Aff. ¶¶ 6–7.)  She also lodged complaints with Defendant Daniels during the next school year.  There is no evidence to suggest that anyone ever threatened to take any action against Mrs. Davis that would have deterred "a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Washington v. Cnty. of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004).  Thus, with the exception of the allegation

---

Davis Dep. Tr. at 68.)  However, because these allegations were not included in the Amended Complaint, the Court will not address them.

of retaliation by Defendant Daniels, which occurred after the OCR complaint was filed, Mrs. Davis has failed to establish a viable claim of First Amendment retaliation. Furthermore, as discussed above, there is insufficient evidence in the record for a jury to conclude that Defendant Daniels's decision to deny Keyonna permission to attend Senior Day was motivated by Mrs. Davis's exercise of her First Amendment rights.  Therefore, the Court grants Defendants' motion for summary judgment with respect to Mrs. Davis's First Amendment retaliation claim.

### C.    *Monell* Claim

Plaintiffs also allege a *Monell* claim for municipal liability against the City of New Haven and the New Haven Board of Education arising from the alleged violation of their First and Fourteenth Amendment rights by the individual Defendants.  Because the Court has granted summary judgment on both of Plaintiffs' constitutional claims, summary judgment must also be granted on Plaintiffs' *Monell* claim.  "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).  Thus, Defendants' motion for summary judgment is granted as to Plaintiffs' *Monell* claim.

### D.    **Remaining State Law Claims**

Having granted summary judgment on all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims for intentional infliction of emotional distress and negligent supervision.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie Mellon Univ. Cohill*, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be

considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").  There is no showing of special circumstances here that would justify deviation from this general rule.  *Cf. Garden Catering–Hamilton Ave., LLC v. Wally's Chicken Coop, LLC*, No. 3:11CV1892 (JBA), 2014 WL 810821, at *12 (D. Conn. Feb. 28, 2014) (exercising discretionary supplemental jurisdiction where "both parties [we]re smaller businesses with an ongoing dispute, and they [we]re in particular need of a prompt adjudication").

**V.      Conclusion**

For the foregoing reasons, Defendants' Motion [Doc. # 74] for Summary Judgment is GRANTED as to Plaintiffs' federal claims, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. Plaintiffs' Motion [Doc. # 85] to Consolidate is DENIED; Plaintiffs' Motion [Doc. # 86] to Request Subpoena is DENIED as moot; and Plaintiffs' Motion [Doc. # 88] to Supplement the Pleadings is DENIED.  The Clerk is directed to enter judgment in favor of Defendants and to close this case.


IT IS SO ORDERED.

           /s/
_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 30th day of March, 2014.